IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**CHRISTOPHER WHITE**,

        Plaintiff,

    v.

**CITY OF TURNER POLICE CHIEF DON TAYLOR**, by and through the **CITY OF TURNER POLICE DEPARTMENT**, a political subdivision of **TURNER, OREGON**; **CITY OF TURNER MANAGER DAVID SAWYER,** by and through the **CITY OF TURNER POLICE DEPARTMENT**, a political subdivision of **TURNER, OREGON**,

        Defendants.

No. 6:18-cv-01909-MC

**OPINION AND ORDER**

**MCSHANE, Judge:**

      Plaintiff Christopher White is a deputy sheriff at the Marion County Sheriff's Office. He previously worked as a police officer for the City of Turner Police Department in Turner, Oregon. Mr. White brings this action against the City of Turner and two of its employees for allegedly filing a libelous complaint with the Marion County Sheriff in retaliation for critical statements Mr. White made about his former employer. Mr. White asserts one claim pursuant to 42 U.S.C. § 1983 for First Amendment retaliation and one state-law claim for defamation. Defendants move in relevant part to dismiss the Section 1983 claim under Fed. R. Civ. P. 12(b)(6) and to strike the defamation claim pursuant to Or. Rev. Stat. § 31.150. Because a public official's defamatory statements, standing alone, cannot give rise to a cognizable claim for First

Page 1 – OPINION AND ORDER

Amendment retaliation, and because the Court declines to exercise supplemental jurisdiction over the remaining state-law claim, Defendants' motion to dismiss is GRANTED and their motion to strike DENIED as moot. Mr. White's Complaint is DISMISSED without prejudice.

## BACKGROUND

Mr. White worked as a police officer for the City of Turner Police Department from May 9, 2013 to November 8, 2015. Compl. ¶¶ 10, 12, ECF No. 1. Upon resigning his position with the City of Turner, Mr. White joined the Marion County Sheriff's Office as a deputy sheriff. Compl. ¶ 12. His wife, non-party Larissa White, was hired on October 27, 2015 to replace him as a police officer at the City of Turner Police Department. Compl. ¶ 13.

Mrs. White worked at the City of Turner Police Department until she was terminated on July 31, 2017. Compl. ¶ 19. Although the circumstances of her termination are disputed and the subject of separate constitutional and whistleblower litigation, *see White v. Taylor*, No. 6:18-cv-00550-MK (D. Or. filed Mar. 30, 2018), the City of Turner represents that Mrs. White was dismissed for falsely reporting hours on her time sheets, Compl. ¶¶ 18-19.[1]

After her termination, Mrs. White applied for unemployment benefits with the Oregon Employment Department ("OED"). Compl. ¶ 20. An investigation of her application by the OED concluded that Mrs. White had not committed a "willful or wantonly negligent violation" of the City of Turner's personnel policy. Compl. ¶¶ 21-22. She was therefore eligible for unemployment benefits and awarded the same on August 18, 2017. Compl. ¶ 22.

The City of Turner appealed the OED's decision. As part of that appeal, Mr. White submitted a declaration in support of his wife's application for benefits. Compl. ¶¶ 23-24. The declaration, recorded on November 14, 2017, contained the following statements:

---

[1] According to the Complaint, Mrs. White maintains that she was terminated as retaliation for whistleblowing activities. *See* Compl. ¶¶ 16-19, 26.

Page 2 – OPINION AND ORDER

1. During my time as a police officer with the City of Turner, there was no formal policy regarding the use of sick leave, comp time, or flex time.
2. During my time as a police officer with the City of Turner, the City provided no formal training regarding the use of sick leave, comp time, or flex time.
3. During my time as a police officer with the City of Turner, I was not required to ask permission to use sick leave, comp time, and/or flex time.

Compl. ¶ 24. The City of Turner ultimately withdrew its appeal, but not before viewing Mr. White's declaration. *See* Compl. ¶¶ 24-25, 27.

Shortly thereafter, City of Turner Manager David Sawyer lodged a formal written complaint with Mr. White's current employer, the Marion County Sheriff's Office. Compl. ¶ 27. In his complaint, Mr. Sawyer alleged that Mr. White had submitted false statements as part of Mrs. White's unemployment proceeding. Compl. ¶ 27. Specifically, Mr. Sawyer maintained that Mr. White's description of the City of Turner's timekeeping policies and practices in his declaration was "false and dishonest." Compl. ¶ 27.

In response, on December 12, 2017, the Marion County Sheriff's Office opened an internal affairs investigation into Mr. White. Compl. ¶ 28. Mr. White was provided with a formal Notice of Investigation and interviewed in connection with the investigation on January 17, 2019. Compl. ¶¶ 29-30. The Marion County Sherriff's Office failed to find any "evidence of untruthfulness" and, unable to sustain the allegations that Mr. White had submitted false or dishonest statements, closed its investigation without further action. Compl. ¶ 31.

Mr. White filed the instant action on November 1, 2018. He brings one claim pursuant to 42 U.S.C. § 1983 for First Amendment retaliation against Mr. Sawyer, Mr. Taylor, and the City of Turner.[2] He also brings one claim for state-law defamation against Mr. Sawyer. All three

---

[2] Strangely, the City of Turner is not named as a defendant in the caption of the Complaint, listed as a party on the docket, or named in the Summons. The Complaint also lists Mr. Sawyer and Mr. Taylor as being sued only in their

Page 3 – OPINION AND ORDER

defendants move to dismiss the Section 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6). Mr. Sawyer also moves to dismiss the defamation claim pursuant to Oregon's anti-SLAPP statute, Or. Rev. Stat. § 31.150, or, in the alternative, Fed. R. Civ. P. 12(b)(6).

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. When considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), but it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. If a complaint is dismissed, the court must grant the plaintiff leave to amend unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants move to dismiss Mr. White's federal and state-law claims. Since jurisdiction over the state-law claim is tied to the viability of Mr. White's federal claim, the Court need only address the defamation claim if Mr. White is able to state a federal claim. Section 1983 allows a

---

individual capacities. Compl. ¶¶ 5-6. The City of Turner, however, is expressly named as a defendant in the body of the Complaint, *see, e.g.*, Compl. ¶ 7, and it is clear from reading the entire Complaint that Mr. White intended to name the City of Turner as a defendant. More importantly, the City of Turner considers itself a defendant to the action—having identified itself as such in the instant motion to dismiss and having presented City-specific arguments in the same—and has forfeited any defenses based on insufficient process or service of process by failing to include those defenses in the present motion. *See* Fed. R. Civ. P. 12(h)(1).

Page 4 – OPINION AND ORDER

person to bring suit against a municipality and its officials for depriving her of a constitutional right. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). To prevail in such an action, a plaintiff must show that the defendant both (1) acted "under color of state law" and (2) deprived her of a "right secured by the Constitution or laws of the United States." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). The parties here do not dispute, and the Court assumes, that the alleged conduct of each defendant occurred under color of state law. At issue here, rather, is whether any of the defendants deprived Mr. White of a "right secured by the Constitution," namely his First Amendment right to free speech.

The First Amendment, in addition to creating an affirmative right to speak, "protects citizens from attempts by government officials to chill their speech." *Mulligan v. Nichols*, 835 F.3d 983, 986 (9th Cir. 2016). Included in this protection is the right to be free from retaliation by public officials for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citations omitted); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The right to be free from retaliation, however, is not absolute. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000). The level of protection afforded to a speaker varies, for example, based on the relationship between the speaker and the government actor being sued. *See City of San Diego v. Roe*, 543 U.S. 77, 80 (2004); *see also CarePartners, LLC v. Lashway*, 545 F.3d 867, 879-82 (9th Cir. 2008). Specifically, where the speaker is an employee of the government actor, her speech is afforded less protection than that of a private citizen. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100-01 (9th Cir. 2011) (citations omitted).

Under the private citizen framework, a plaintiff alleging retaliation need only show that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage

in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). A public employee alleging retaliation, by contrast, faces two additional hurdles. First, a public employee's speech is entitled to protection only if it is on a matter of "public concern." *Connick v. Myers*, 461 U.S. 138, 146-48 (1983). A public employee's speech on matters of "personal interest," such as internal office procedures, does not enjoy First Amendment protection. *CarePartners*, 545 F.3d at 880 (citation omitted). Second, even if a public employee can show that she was subject to an adverse action based on her protected speech, the retaliation may still be justified if the government can show that it has a legitimate interest in "promoting the efficiency of public services" which outweighs the employee's interest in free expression. *Connick*, 461 U.S. at 142 (citation omitted).

The parties here disagree as to the standard which should govern Mr. White's retaliation claim. Defendants argue that Mr. White should be treated as a public employee for purposes of the claim. They acknowledge that Mr. White was no longer employed by the City of Turner when he submitted his declaration but maintain that the public employee standard has been extended to other analogous contexts. Defendants also suggest that Mr. White, in pleading his retaliation claim, relies on the public employee framework because he describes his speech as pertaining to a "matter of public concern." Compl. ¶ 34. Mr. White, in response, notes that he was no longer employed by the City of Turner when he filed his declaration and, as such, was not speaking as a public employee. Instead, he argues that the declaration was made in his capacity as a husband who—independent of any responsibilities to the City of Turner—supported his wife's application for unemployment benefits.

The statements made by Mr. White are more appropriately analyzed under the private citizen framework. The Ninth Circuit has "cautioned against extending the [public employee standard] beyond the public employment context." *CarePartners*, 545 F.3d at 881-82. In evaluating whether to permit such extensions, the Ninth Circuit generally considers (1) whether the relationship between the parties is analogous to that between an employer and an employee, and (2) whether the relationship implicates the government actor's ability to perform public services in an orderly and efficient manner. *CarePartners*, 545 F.3d at 881 (citation omitted). Although courts have occasionally allowed extensions, such cases typically involve some form of contractual or other active relationship between the speaker and the government actor. *See, e.g.*, *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673-86 (1996) (independent contractor); *Clairmont*, 632 F.3d at 1100-02 (employee of independent contractor); *Copsey v. Swearingen*, 36 F.3d 1336, 1343-45 (5th Cir. 1994) (licensed vendor in government building).

Here, neither factor weighs in favor of applying the public employee framework. First, Mr. White's relationship with the City of Turner looked nothing like that of an employee. Mr. White performed no function on behalf of the City of Turner, worked for a new employer with no direct relationship to the City of Turner, and impacted the City of Turner only indirectly—if at all—in his new job. Second, Mr. White's speech had no effect on the City of Turner's ability to perform public services. As noted above, when the government acts as an employer, its interest in "achieving its goals as effectively and efficiently as possible through its employees" justifies reduced First Amendment protections. *Umbehr*, 518 U.S. at 676 (citation omitted). The government must be able to oversee day-to-day workplace operations without "intensive judicial supervision of its management functions." *Id.* at 678. That rationale, however, does not apply where, as here, the speaker is entirely removed from the actor's administrative ecosystem. Mr.

White, for instance, worked outside of the City of Turner and his speech in no way undermined its ability to deliver law enforcement services or perform day-to-day operations. It would therefore be inappropriate to treat Mr. White as a public employee.

Nevertheless, even under the more liberal private citizen framework, Mr. White's retaliation claim fails as a matter of law. The adverse action identified by Mr. White is the allegedly defamatory statement made by Mr. Sawyer to the Marion County Sheriff. Normally, "the adverse retaliatory actions complained of by plaintiffs are exercise[s] of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech." *Mulligan*, 835 F.3d at 988 (citations and quotation marks omitted) (alteration in original). The essence of Mr. White's claim, however, is that Defendants "chilled his right to speak freely by engaging in speech of their own that significantly damaged his reputation." *Id.* The Ninth Circuit has warned lower courts that "claims involving government speech"—even defamatory speech—"warrant a cautious approach." *Id.* at 989. As the court explained in *Mulligan*, "[r]estricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties. It also ignores the competing First Amendment rights of the officials themselves." *Id.*

To that end, a public official's defamatory statements made in retaliation for protected speech—including statements made directly to the speaker's employer—are generally not actionable under the First Amendment. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *see also Mulligan*, 835 F.3d at 989. This is true even if the defamation seriously harms the speaker's reputation or results in loss of her job. In *Gini*, for example, the Ninth Circuit held that a local police officer's defamatory statements made directly to the plaintiff's federal employer were not actionable under the First Amendment, even though the

Page 8 – OPINION AND ORDER

plaintiff lost her job. 40 F.3d at 1044-45. The same was true in *Mulligan*, where the plaintiff lost his job after city and police union officials leaked damaging information about him to members of the media. 835 F.3d at 988-91. Instead, to support a retaliation claim, a plaintiff must show that (1) the defendant "ma[d]e [a] decision or [took a] state action affecting [her] rights, benefits, relationship or status with the state;" (2) she was denied or lost "a valuable governmental benefit or privilege;" or (3) the defendant's speech included a "threat, coercion, or intimidation" suggesting that "punishment, sanction, or adverse regulatory action" would imminently follow. *Mulligan*, 835 F.3d at 989-90 (citations and quotation marks omitted).

Here, Mr. White alleges only that Defendants injured his reputation and that, as a result, he was subject to an internal affairs investigation by his new employer. He does not allege that he was terminated or even reprimanded by his employer as a result of the alleged defamation—far harsher consequences which themselves were found insufficient to support retaliation claims in *Gini* and *Mulligan*. Nor does Mr. White allege that the City of Turner threatened him or his new employer with "punishment, sanction, or adverse regulatory action," directly took a state action affecting his "rights, benefits, relationship, or status with the state," or denied him a "valuable governmental benefit or privilege." Although Mr. White argues that lodging a formal complaint with his employer constituted a standalone "state action" affecting his "relationship or status with the state," Mr. Sawyer's complaint was merely non-coercive speech which *itself* could not change Mr. White's relationship or status with the state; rather, it was directed toward and prompted *another* government actor to do so. As the Ninth Circuit made clear in *Gini*, which also involved formal contacts between a police official and the plaintiff's government employer, Mr. White's allegations cannot support a claim for retaliation.[3-4]

---

[3] The Sixth, Seventh, Eighth, and Eleventh Circuits have rightly held that the Ninth Circuit's treatment of retaliatory defamation by public officials is based on a clumsy misreading of *Paul v. Davis*, 424 U.S. 693 (1976). *See Echols v.*

## CONCLUSION

Defendants' motion to dismiss Mr. White's Section 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. In addition, because the Court declines to exercise supplemental jurisdiction over Mr. White's state-law claim, *see* 28 U.S.C. § 1367(c), Mr. Sawyer's motion to strike Mr. White's state-law defamation claim is DENIED as moot. Mr. White's Complaint is therefore DISMISSED without prejudice and with leave to amend within 30 days.

IT IS SO ORDERED.

DATED this 17th day of May, 2019.

                         */s/* Michael J. McShane
                         Michael J. McShane
                         United States District Judge

---

*Lawton*, 913 F.3d 1313, 1322-23 (11th Cir. 2019); *Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010); *Tierney v Vahle*, 304 F.3d 734, 741 (7th Cir. 2002); *Mattox v. City of Forest Park*, 183 F.3d 515, 521, n.3 (6th Cir. 1999). This Court, however, is not at liberty to disregard binding appellate precedent, no matter how dubious.

[4] Since there is no underlying constitutional violation, the Court need not address Mr. Sawyer and Mr. Taylor's qualified immunity arguments, nor the City of Turner's arguments regarding municipal liability under *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).